Mr. Miller. Mr. Chief Justice, and may it please the Court. The suit in this case suffers from two independent jurisdictional defects, either one of which provides a basis for reversing the judgment of the Court of Appeals. The first is that the United States has not waived its sovereign immunity from suits challenging its title to Indian trust lands.  of the court of appeals. Could you tell me who you think would have a valid and timely APA action to challenge what the Secretary has allegedly done here, which is to take lands into trust in violation of the statute, per our earlier — I know that the U.S. is challenging that assumption, but let's assume that the reality of the allegation. Who would — who would be able to challenge it and what mechanism? There are two parts to that. In taking the timing question first, the claim would have to be brought before the land was taken into trust, and that's why the regulation set out a 30-day period after the announcement of the intent to take the land into trust before title is actually transferred. So somebody would have to file during that period, as the Mischko plaintiff did here. Sotomayor That I understand. That's why I said a timely filing. And the proper plaintiffs for a claim under section 5, and of course there can be other claims under NEPA or the IGRA, but under section 5 of the IRA, the proper plaintiff would be a State or local government, because those are the entities that are directly affected, directly regulated by the transfer of jurisdiction. Sotomayor Let's assume a situation where you first plow and mist the land to one tribe, and then in the midst of negotiations another tribe lays claim, and the United States says, I changed my mind, I'm going to give the land to the other tribe. Does the tribe that you have denied the land to have any standing or any right to claim the land, would it have any rights with respect to challenging that determination? Yes. As the beneficiaries of section 5, the parties for whose benefit Congress acted and the Secretary would be acting, I think in that scenario a tribe would have standing to challenge it. Scalia Mr. Miller, you claim on behalf of the government that the decision whether to take the land into trust has nothing to do with the use to which the land will be put, wherefore these plaintiffs who are complaining about the use to which it will be put have no standing. If that is so, why did the government delay the taking into trust for three years while there was pending a lawsuit which would have prevented the use that the government intended the newly trusted land to be used for? You delayed for three years because there was a challenge to whether you could use, whether this land could be used for what you call gaming and I call gambling. Why did you delay for three years if it's irrelevant? Well, the challenge in that case was not just to the use. It was to the decision to take title to land into trust. And the Secretary's policy as set out in the statute. Well, wait. On what basis? On any basis other than? There was a NEPA claim, for example. And the plaintiffs in that case, the MISCO organization, alleged that the Secretary had not complied with NEPA, had not adequately considered the environmental consequences of the action to take. What environmental action consequences are there from the mere decision to take it into trust? Unless you know what it's going to be used for, you have no idea what the environmental consequences are. Well, that's, that is true. And it is also true that NEPA may, in some circumstances, require consideration of the use for which the land is to be put. But it doesn't follow that Section 5 requires or contemplates protecting the interests of nearby landowners from the use. But the challenge was to the transfer, you say. Well, that, I mean, that was the allegation. Based in part on the use to which it was going to be put, right? Right. But what, what MISCO was seeking, what the plaintiff was seeking in that case was an injunction barring the transfer. And the Secretary's policy, the whole point of the 30-day regulation, is to allow people who want to challenge the transfer to have a full opportunity to litigate those claims, and that is why it's there. That wouldn't be true of Mr. Potchak? Suppose he had filed in the 30-day window. The Secretary gives notice to affected persons. So he comes in and he says, I think that you don't have authority to do it because this tribe wasn't under Federal jurisdiction, and so I want you to call, call it off. Nothing, nothing has been transferred within 30 days. I thought both your brief and the tribe's brief said that the judicial review would be available to any affected person who used that procedure. Is that, is that true? I mean, if they could establish standing. But if he had filed within the 30-day period, the Secretary would not take title to the land until there was a full opportunity for judicial review. Now, in this case, he filed outside the 30-day period. He was aware. But you said you had an important if. So the argument is this tribe wasn't under Federal jurisdiction. I can raise that because I'm an affected person. Somebody's got to be able to enforce against the Secretary the limitations that Congress put on the Secretary. So would there be standing in that situation? This Potchak comes in within the 30-day period, so he's not trying to undo any done deal. There would not be standing for Potchak as a private individual. There would be standing for a State or local government or in the unusual situation that Justice Sotomayor suggested for another tribe. So then you disagree with the tribe, but said in no uncertain terms in its reply brief, that this case is not about the availability of judicial review. Judicial review was available in the 30-day window. I think we don't disagree with that in the context of the discussion of the sovereign immunity issue. I don't understand that statement in the tribe's brief to have been a concession that there would have been standing. Well, on the standing point, I mean, the distinction that you're setting up between acquisition of land and use of land, this goes back to Justice Scalia's question, it strikes me as artificial, that the question of when land is acquired is all tied up with the question of what use is going to be made of it. The government doesn't acquire this land with no object in mind. It thinks about how the land is going to be used, so that in the end, this really is a land-use statute, isn't it? Well, it is a land-use statute in this sense, in the sense, and you're right that the regulations do refer to the purposes for which the land is to be used, but that's because of the statute. And the statute as well thinks of this as a statute that's designed to promote economic development, which is dependent on some understanding of how the land is actually going to be used by the tribes. That is exactly right, and that's why in determining whether the Secretary has to take account of use in order to determine whether it will, in fact, serve the interest of promoting tribal economic development and self-governance, but it doesn't follow that the effect of that use on bystanders, on other property owners in the vicinity, is within the interests that Congress had in mind. Scalia Why not? Of course, it doesn't have to be within the interests. It doesn't have to be arguably within the interests. That adverb is left out in much of the discussion. But if indeed the use of the land is one of the elements to be considered in taking title, why isn't somebody who is affected by the proposed use within the zone of interest? Because, I mean, just to take the facts of this case as an example, you know, Patchak's objection is not to the jurisdictional transfer. It's not to the fact that this is now going to be tribal land rather than land subject to the taxing or regulatory authority of the State of Michigan or Allegan County. Roberts Just to interrupt you, in other words, it's not to the title? Well, I mean, that is the relief he is trying to get is to undo that. But the injury doesn't come from that. The injury comes from the fact that the land is going to be used for gaming. But in 1934 the injury comes from the government's taking title for gaming. Okay? You could put it that way as well. But inasmuch as the government always has a purpose in mind when it takes title. But for the zone of interest test, the question would be, are people who may be adversely affected by gaming on Indian land within the zone of interest, is that interest arguably something that Congress is seeking? On what date was it clear that the use would be gaming? There's some suggestion in the briefs that, oh, well, it could be light industry and it was zoned for economic use generally. At what point was it acknowledged by all that this would be for gaming? At the very outset? I believe that in applying to have the land taken into trust, the tribe said that At the very outset. it wanted to What would happen if someone filed a challenge within the 30-day period and then the government took title to the land while the litigation was pending? Did the regulations preclude that from happening while the litigation continues or is it necessary for the challenger to obtain a stay from the court? The regulations do not address that. The BIA manual provides that that action of taking the land into trust should not be taken while the litigation is pending. Was that enforceable? I think that it would not be, but I think that I guess I would say two things about that. The first is that the Secretary enacted these regulations, the 30-day notice rule, precisely for the purpose of ensuring that there would be an adequate opportunity for judicial review and thus removing the constitutional doubt that the Eighth Circuit had found associated with the IRA. And I think so there is every reason to think that the Secretary is going to provide for, which is allowing judicial review. And if the Secretary were ever to do that, I think you would find that going forward in every case, courts would enter a stay. Well, they didn't here. I mean, when Patrick filed his suit, title had not yet passed to the Secretary. Yeah, right. And he sought a stay. And it was denied and he could have sought relief from the court of appeals. But nothing, at that point, you thought nothing prevented the Secretary from moving  And in fact, the Secretary did move forward even though he had already filed the suit. Yes. Then why isn't it just like your 30 days? Because this was a suit that was not filed within the 30-day period. So what? I mean, this is exactly the point that I don't understand. Forget standing for a moment. I'm just thinking of your quiet title action. This wasn't an action to quiet title at all. This was a — I looked at the complaint, as I gather from this question, so did the Chief Justice. And it is a complaint filed before the property was taken into trust, and it asks for an injunction under the APA, it wants review of that, before the government has any title to it at all, or at least it hasn't taken it into trust. So why are we considering quiet title? What does that have to do with this? Why isn't it exactly — now, that's the same as the Chief Justice asked, and I have exactly the same question. Well, and in that period before the land is taken into trust, the APA, everyone agrees, permits. All right. Well, why isn't that — that's the end of that argument, then, isn't it? Because this suit was brought seeking an injunction before the land was taken into trust. The district court denies the request for the injunction. The court of appeals reverses that. And so there we are. So we're reviewing that action by the court of appeals, reviewing a judge who said you are not entitled to an injunction sought before the land was taken into trust. Because at this point, the question of whether to enjoin the transfer from taking place is moot. No, I don't know about that. Well, good. The relief that's being sought now, and this is made clear in Patchak's brief in the court of appeals, is an order compelling the Secretary to relinquish the title to the land. I don't know how we should treat that. There was an order. Suppose that order was wrong. Suppose they should have granted the injunction. Then isn't what we should do, send it back, because that injunction should have been granted, then have a hearing or trial or whatever you want to have on whether the act applies, and then figure out how you do relief, which I don't know? No. The time to seek review of whether to enjoin a not yet completed transfer is before the transfer is completed. They did. They did. And if he wanted to appeal the district court's denial of that injunction, he could have done so as a right. He didn't appeal that. He appealed a different. Well, then your argument is just one of timing and not the fact that the reliance is on the QTA. The tribe says, isn't it ironic that if you really have a claim in the land, a property owner, you can't sue under the QTA, and this person is much further removed? Well, that's because he has a different ground for relief. That's all we're talking about. So the fact that the QTA suddenly, a deus ex manica, pops onto the scene, it doesn't mean that that changes his ground for relief that he's relying upon. His ground of relief has always been the same, APA. With respect, Your Honor, once the land is taken into trust, the only effective relief would be an order taking the land out of trust. And that's what brings this within the scope of the QA. Well, that depends on whether sovereign immunity is judged as of the time of the filing of the complaint or as of the time of the litigation of the sovereign immunity claim, right? And you claim you don't want us to address that issue. We think it's not properly before the Court, but one thing I would just say about that is it is not remarkable or it often happens that as the nature of the claims or the identity of the parties changes throughout the course of litigation, sovereign immunity can bar a suit that wouldn't have been barred before. And one example of that is under the Westfall Act. If somebody sues an officer of the United States for a tort, that suit can go forward. But if the Attorney General then certifies under the Westfall Act that the employee was acting within the scope of his or her duties, then it gets converted into an action against the United States, which might, if it falls within one of the FTCA exceptions, be barred. But the Act provides for that. The Act provides for that, right? Well, but that's just an example of how, as the parties or the relief, here it's the relief, changes, sovereign immunity can bar an action. If I could reserve the remainder of my time, please. Roberts. Thank you, counsel. Ms. Millett. Mr. Chief Justice, and may it please the Court. When you strip title to land, which is a fact in this case, you strip sovereignty. You wreak havoc on ongoing governmental operations, on criminal jurisdiction, civil jurisdiction, the backdrop against which contracts were negotiated, investment decisions made, and economic development undertaken. That is why the Congress of the United States and this Court in Coeur d'Alene have never allowed injunctive relief to strip the United States of title that it has. The essence of sovereign immunity is right or wrong. You cannot take title away that the United States has. Well, is that in the Administrative Procedure Act? I thought the Administrative Procedure Act eliminates the old bugaboo of sovereign immunity and says when it will stand and when it won't. And if you're relying on the Quiet Title Act, that clearly covers only suits which seek to say I own the land rather than the government. And this is not such a suit. So I don't see why normal APA principles wouldn't govern. For two reasons, Justice Scalia. Because the APA itself, and this is on page 6A of the item to our brief, says that it does not waive sovereign immunity and does not grant relief if another statute expressly or impliedly forecloses the relief that is sought. And the Quiet Title Act says you cannot have an injunction stripping the United States of land, period, and you cannot have any litigation over title. No, but the relief to be sought under the Quiet Title Act is title in the plaintiff. That's the relief ultimately sought. Now, on the way to that, you may get some injunctive remedy, but the basis for the suit is not I own the land. With respect, Justice Scalia, you can get no injunctive relief whatsoever even if you are asserting title. But the Quiet Title Act itself is brought in and it limits relief to monetary compensation unless the government agrees. Relief in that kind of suit. Yes. Yes. Relief in that kind of suit. But this is not that kind of suit. Justice Scalia, with respect, on page, this is 2A of the addendum to our brief, 2409AA, the type of suit that is addressed and to which the Indian lands exception applies is a suit, and I'm reading here from the second line of AA, a civil action. Excuse me. I guess I've lost you. I'm sorry. I'm on the addendum to our, the blue brief, 2A, and this is the Quiet Title Act. Okay. And right, subsection A, the second line, all right? The waiver of sovereign immunity is for a civil action under this section to adjudicate a disputed title. It does not say. Ms. Millett, it also says under this section. Yes. And the section describes the complaint. It says the complainant shall set forth with particularity the nature of the right title or interest which the plaintiff claims. So the type of suit that this section has in mind is a suit in which the plaintiff claims a right title or interest, and the language that you read under this section, well, that's what this section is about, a suit in which a plaintiff claims the right title or interest. No, Justice Kagan. In this respect, that tells you what you have to do if you are allowed to proceed under the statute to win, the first step of what you have to do. But what subsection A says is what is carved out, what is a wholesale, and this Court said in Motaz, a retention of immunity even in the face of arguments that the government has done wrong administratively, as in Motaz. What you have done is retain immunity. When the second sentence in here, right under the sentence I read, Justice Scalia, about this section does not apply to trust or restricted Indian lands, what that meant was that Congress, against a backdrop of complete immunity, said we've looked at lands, we've looked at land, and we are not doing two things, and we're going to be explicit about it. We are not letting you touch Indian lands. The United States is not immunity. You can say that again and again, counsel, but it does say under this section. And I don't know how you get out from under that. It says under this section. And if this section applies only to suits seeking to assert title on the part of the plaintiff, it's not under this section. This section is, I think, defined by what Congress's waiver of sovereign immunity. And it didn't say we're waiving sovereign immunity for quiet title actions. It says for a civil action in which the United States' title is disputed. So it's a quiet U.S. title. Breyer, you can't believe that totally, because you agree there's some APA review of an action brought before the title shifts where the claim is you cannot take title from somebody else. And you can take title from a federal secretary. You agree with that. You can bring some. Okay. Once you agree to that, I stop at the words not just under this section, but to adjudicate a disputed title to real property. Then I read his complaint. His complaint on 31 to 38 is asking for an injunction. And it's asking for an injunction before they take any title to the property. And maybe they went ahead and did it anyway. But is there some other complaint that I didn't read? Is there some amendment to the complaint in the record? If so, where is it? I think there's a constructive amendment in this sense, because if his only thing I don't know what a constructive amendment is. I can explain. If I can explain. To be sure, the complaint, which was untimely filed for purposes of the protection of the government's not taking it into trust, but it did seek to stop the decision from happening. After that happened, when he did not seek appeal or emergency relief from the district court not giving him the injunction he asked for, he asked for a preliminary injunction to stop the taking of title. The district court didn't give it. It actually sat on it, constructively denied it. And it's well recognized in courts of appeals you can appeal a constructive denial of a preliminary injunction. He didn't do that. This is the way litigation works. Title shifted. Sovereign immunity shifted. The Quiet Title Act didn't apply. Then it did apply because title was in the hand and in the name of the United States government. I thought you were going to answer how his complaint constructively changed. And so after that, he had two choices. He could have dismissed the action as moot. But what happened is he continued to press, and this is on page 25 of his brief, his court of appeals brief at page 26 and 27. He wants an injunction now not to stop title, but to take title out. And that's when the Quiet Title Act was enacted. I thought you were going to tell us how it constructively changed to be an action seeking to have a decree that title was in him, which is what the QTA covers. No. It was. Okay. No, because the Quiet Title Act. Even constructively, it hasn't turned into that. The Quiet Title Act, when it says the only way we'll give you a relief is if you can have an interest in the land, forecloses suits seeking to adjudicate, excuse me, dispute a U.S. title by those who don't even have an interest. Counsel. And against the back, I'm sorry. Counsel, you're assuming that the statute was passed against a backdrop of complete sovereign immunity. But if you look at Larson and Malone, it appears as if prior to the enactment of the QTA, people could bring suits to say that an officer had acted beyond his or her statutory authority. So what the Quiet Title Act did was encapsulate some of that law. From where do we draw the conclusion that the intent was to eliminate every other claim that could be brought under something like the APA or an officer's suit? To be clear, as Justice Scalia himself then testified before Congress, the law was a mess and you could not discern anything from Larson and Malone. And the one area where actually courts had pretty consistently denied relief, as Justice Scalia then said, was in the land area. And Congress responded to hardship. But in doing so, it was making a critical balance. It knew how disruptive to government it is to pull the rug out from under the feet of the Federal Government's operations. And it said we're going to draw lines. And there's three lines. It said no suits involving Indian lands, no injunctive relief or coercive injunctive relief at all will be allowed. If you have a right, you will only get damages unless the government agrees otherwise. And to prevail, you must have an interest in land. Now, that is a concerted judgment of Congress that we will not pull. Roberts. Let's suppose the tribe or the Mr. Patchak brings a nuisance action against the tribe for running a casino and imposing all these difficulties on the surrounding previously rural communities. Says this is a nuisance. And the tribe answers and says, no, we can do this under the Indian Gaming Regulation Act. And Patchak then says, well, no, because you don't have valid authority under that act because the Secretary shouldn't have taken the land into title. Now, that is not a quiet title action. That is a nuisance action. Can he have that adjudicated in that suit? He could bring a nuisance action, assuming the tribe waived sovereign immunity, which would be its own problem. I'm assuming this is a suit against the tribe and not the Secretary.   And so there would be their own State law or sovereign immunity questions. If he could bring it, and then if the government tried to raise this as — or, excuse me, the tribe raised it as a preemption defense, then there would be a separate question whether at that point a court could issue, consistent with the Quiet Title Act, a declaratory judgment which would pull the rug out from the government's  Now, to be sure in that — Right, but there would be no question of his ability to sue and put that question at issue. There's no question he could bring a — assuming tribal sovereign immunity, that he could bring a nuisance action. But it's also important to remember in that context the other reason that nuisance action would fail is that the courts have already ruled on this claim, about the legitimacy of authorization of gambling, about the environmental effects and the aesthetics effects and the Mischko litigation. This is simply recycled through the IRA claims that have already been adjudicated and lost. Well, but that's a question that's not before us. But with respect to the question of judicial review that was mentioned earlier, and I think would be implicated, obviously, in a nuisance action for — this is sort of being case-specific with respect to claim preclusion and issues like that. Thank you, Counsel. Your Honor. Mr. Nelson. Thank you, Mr. Chief Justice, and may it please the Court. This is a classic APA action. Mr. Patchak is challenging unlawful agency action. Mr. Patchak is not asserting a quiet title action where someone asserts an interest in property owned by the government and is trying to get that property back. And as this Court has already discussed, the best evidence of that is the fact that Mr. Patchak filed this suit before the land was taken into trust. The fact that the government subsequently took the land did not affect the nature of Mr. Patchak's lawsuit. But he didn't file it within the 30-day window. So there is — there was a clear track. He could have filed within 30 days, and at least the government tells us that that would have been subject to judicial review, the ruling made within — and that nothing would go on until that action was cleared. So why — if he could have sued early, before any title transfer, why isn't that all the relief someone in his position would be entitled to? Why should he be allowed to wait? I mean, the whole purpose of the 30-day window is to get people to state their objections. Justice Ginsburg, the 30-day window is a notice period. Mr. Patchak did, in fact, file his lawsuit within the six-year statute of limitations provided by Congress for APA claims. And the reason that the Secretary adopted the 30-day notice provision is the very argument that we believe is misplaced here, namely that the Quiet Title Act springs up to bar judicial review after the land is taken into trust. We don't believe that's the case because Mr. Patchak is not asserting a Quiet Title Act action, which is limited to those claims where someone says, this is my property and I want it back, or with regard to the government, at least pay me for it. You say the 30-day window only applies to Quiet Title actions. Your Honor, the 30-day window — yes, if someone was asserting a Quiet Title action, the 30-day window would apply. Sotomayor, surely the 30-day envisions comments by anybody, not just people who claim to own the property, doesn't it? Your Honor, certainly it provides for comments in that people can come and assert their comments, absolutely, but it doesn't prevent someone from asserting a lawsuit. Would you have been entitled to file in that 30-day period? How is your claim, the one that you ultimately made, any different than what you would have done if you had filed within the 30 days? Same claim, right? It is the same claim, yes, Your Honor. All right. Tell me what relief you're seeking that's different than — are you — what relief are you seeking? Aren't you seeking to shed the United States of its title? Your Honor, the relief that — Just what's the — don't tell me what your cause of action is. What relief at the end of the day do you want? Justice Sotomayor, Mr. Patchak is seeking a declaratory judgment that the decision of the Secretary that it can take land into trust for this particular band of Indians is incorrect, and that, therefore, the decision to do so is ultra viris, and as an incident to that relief, now that the government has taken the land into trust, that the land now be taken out of trust. That does not convert this, though, into a quiet title action, because Mr. Patchak is not asserting an interest in the property itself. The relief of the quiet title action provides has two parts. It both provides for that title will be taken from the government, and the title will be quieted in the plaintiff. The relief that Mr. Patchak is seeking does not include quieting title in himself. Mr. Nelson, putting that question aside of whether this is or isn't a quiet title action, there's another question, which is whether sovereign immunity can come into effect after a suit has been filed. It seems to me a hard question and one that has not been briefed by either party particularly. So I just ask you, is there a case — are there any cases that you can point to that suggest that sovereign immunity cannot come into effect after a suit has been filed? Because what the government says is, you know, circumstances change, conditions change on the ground. Sovereign immunity can pop up where it didn't exist before. Is there any precedent that you have to negate that? Your Honor, I am not at this time prepared to say that there is or is not. I do know that we have cited in the footnote in our brief the — I believe it's the Grupo data flux case that indicates that jurisdiction has decided at the time that the issue was before the court. The government answers to that. That's in diversity. You know, you determine citizenship as of the date the complaint is filed. If the citizenship of a party changes so it coincides with someone on the other side of the line, it doesn't matter. But do you have cases other than diversity cases where the filing of the complaint nothing happens, nothing that can happen after affects the jurisdiction is set as of the time the complaint is filed? I don't know outside diversity where this principle has applied. Your Honor, I am not at this time aware of any cases. I'm not, unfortunately, in a position to say that the cases do not exist or do exist. I believe the issue was addressed in the D.C. Circuit briefing, but I'm not aware at this time of any cases that would address this specific issue. The Solicitor General in footnote 1 of its reply brief says that's the general rule, which I take it there might be exceptions to it. Exceptions. But I'm sure he'll tell us what those are. Counsel, is there any limit to who can bring an APA action under your theory? It seems to me that what you're saying is that anyone other than a landholder, because of the Quiet Title Act, can within six years attempt to unravel any decision the government has made to take land. Because we're not limited now to trust lands. We're limited, under your theory, whenever the government takes any kind of land, anyone's entitled to come in and challenge that action under the APA for six years and to seek an injunction, because it isn't a Quiet Title action. It's merely a challenge to the decision to take land. Is there any limit to your theory as to who can bring that kind of action? Justice Sotomayor, yes, there is a limit on who may assert these actions. First, with regard to this Court's prudential standing analysis would obviously provide a limitation.  on who may assert these actions. In which way? You're saying anyone who's affected, your niece, your farm owner's niece who comes to visit twice a year or visits the land and walks through it could presumably say, I'm negatively affected by the government's taking of this land, Indian or not, within the six years, and the government improperly took the land, undo it? No, Your Honor. I don't believe that my client's niece would have prudential standing because I don't think that that person would arguably be within the zone of interests to assert that claim. I think that the zone of interest test does exclude people who might have Article 3 standing from asserting these types of claims. I thought that — maybe I'm wrong, but the government will correct me if I am. I thought the government concedes that a NEPA action could be brought when the government is taking land to use for a particular use. Let's say it's taking land for a nuclear waste repository. Certainly a NEPA action would lie. You don't disagree with that, do you? We don't disagree. You're supposed to say yes, sir. Good. No, but my question — Counsel, my question was different. Under your theory, you could bring this suit after the land has been taken. NEPA assumes before the land was taken. I'm talking about under your theory of law, once land has been taken by the U.S., if anyone has a viable legal claim that the land was taken improperly, whether it's Indian Trust land or anyone else's land for any other purpose, that person within 6 years can still bring a suit under the APA. Only to the extent that the land is taken as a result of administrative action. No, no, no. You can't — I mean, my question is — Government land is always taken by administrative action. I'm sorry. I thought you're — I mean, sorry. You answered as you want according to your argument. There is a difficult question here. The difficult question is what happens if one brings an ordinary APA suit before land is taken, before that suit can be decided, before that suit can be decided, the government takes the land. Does that transform it into a quiet title action? The obvious answer, which isn't obvious at all, is that the answer is that it's a proper APA suit if you bring it before they take it. And if you bring it after they take it, it's a quiet title action. And that would seem to me a first-blush answer. But I haven't found — I mean, that's a question we don't — I don't know if we have to answer that question. It seems to me quite difficult, and I don't know what authority there is, and it isn't fully argued in the briefs. So what — isn't that what you're thinking? I think Justice Sotomayor is thinking, well, and you just said you can bring it after. I don't know if you can bring it after. So go answer now. I want to hear what you say. Thank you, Justice Breyer. The fact that this — the fact that the land is taken into trust does not transform the action into a quiet title action simply because the government's — Forget about the trust. Okay. Because under your theory of what the APA permits you to do, any time the government takes land, whether into trust or for any other purpose, the APA permits someone within 6 years, with whatever definition of prudential standing you want to give it, to come in after the taking and challenge that it was ultra-virus, that it was done improperly. That's your theory. So going back to Justice Breyer's question, why isn't that within the quiet title action prohibition? Once it's in the government's hands. Once it's in the government's hands, it is — it does not — once the government acquires the title, it does not change the nature of the APA action because the Quiet Title Act is limited to — You're not — you're answering a question with regard to an argument I don't think you've made and I don't think you want to make. You're not asserting that the action can be brought any time within 6 years after the government has already taken the land. You're just asserting that an action brought before the government takes the land does not change its character and become a quiet title action afterwards, right? Yes, Your Honor. You're not saying that anybody can bring within 6 years after the government's taking a suit, are you? I hope you're not arguing that. But he is. Absolutely not, Your Honor. Thank you. What would happen now as a practical matter if Mr. Patchak were to prevail? I take — I understand that the casino is built and running. So what would happen? Your Honor, what would happen here, to our understanding, is the land would be taken out of trust and would revert to the tribe. But I think the government told us that the land didn't belong to the tribe in the first place. Your Honor, I'm not entirely sure as to what the status of the title was. Our understanding is that — Well, the government did say that the band was not the prior owner of the track. So where would it go? Your Honor, the — it depends in part, I believe, at that point, based on state law, what the effect of the court's decision would be. Would it render the trust status void? If so, under Michigan law, the land would vest in the intended beneficiary, which is the tribe. If it does not, if the entire action would be undone, the land would revert back to the      And I think that the band, to my understanding, is a company that involves ownership both by a group of Las Vegas investors and also, to my understanding, the band itself, although I could be corrected on that. I thought part of it was agricultural land and that another part was a business. And I think — I thought — the government can correct me. Your Honor, the land itself was partially agricultural and partially light manufacturing. That was how it was zoned. But it was all owned as a single parcel. The Bradley track was, I believe, a single parcel for the purpose of — But your injury — your injury is that it's being used for gambling. So is there room for relief that would say the government can do what it wants to the land, it just can't let it be used for gambling, if you want? And that would cure your injury and it wouldn't require the government to give back the land and it wouldn't require any unscrambling and title could rest in the government. I don't know if that's possible or not possible. Your Honor, we looked into and wanted to make an argument that somehow you could separate the trust title status and the Federal government's fee simple interest. And in looking at the deed itself, it doesn't look like that can be done. What are the provisions, if any, in the Indian Reorganization Act itself that show a concern for the kind of standing that you're alleging here? It seems to me you're talking about environmental effects and so forth under the Indian Gaming Act, but yet your primary suit is under the Indian Reorganization Act. I don't see — I understand how that might give you standing, but how does it give you a cause of action for relief under the Indian Reorganization Act? Your Honor, land is — The Indian Reorganization Act, just to help pursue the question a little bit further. It has a provision about the public interest, but not in the section that you're relying on. It doesn't say anything about the public interest. Yes, Your Honor. Section 463 of the Indian Gaming Act. 463 does, but you're going under 465. Correct. We're under 465, Your Honor. Justice Kennedy, I would point to the fact that the land is authorized to be taken into trust for Indians, and when land is taken into trust, it necessarily implicates the use. And as soon as the use is implicated, anyone who is affected by that use, people who live in close proximity to that land, are within — are arguably within the scope of those people who Congress would expect. But what is the specific provision of the IRA that you rely on? Do you go back to 463? Because there's nothing in 465 that answers this question, I don't think. Your Honor, I agree that section 465 does not specifically reference the public interest. It does, however, the intent in 465 is to have land taken into trust, and I don't believe that you can separate the fact that the land is being taken into trust from the specific use to which it is being put. Congress authorized the land to be taken into trust for a specific use. And you can see, in fact, that the government has reached the same conclusion when you look at the regulations that the Secretary has adopted in consideration of section 465. They not only address land use — the tribe has to identify the use to which the land will be put — but they also require the tribe to identify any conflicts of land use, which clearly addresses the fact that other people are going to be affected by the land use. Consequently, those — and we believe those regulations are subject to Chevron deference because they fall within the scope of the authority delegated to the Secretary and they don't conflict with the broad delegation there in the — in section 465. So — Kennedy. That's helpful. Just a different question going back to Justice Alito's question. It does seem to me we may be wasting our time. I'm not suggesting that the State — that the case is moot, but you did wait for some three years before you brought this suit, and the building was built. It seems to me there's a considerable laches problem. I suppose that's just not before us. Your Honor, in fact, the APA reserves the laches defense, and the laches defense has been asserted here. But I would point out that the casino had — was — the casino did not open and they did not move forward with this until after the land was taken into trust, which was six months after this lawsuit was filed. At that point, in spite of the knowledge of this Court's decision in Carcieri, they made a reasonable business decision to move forward with this, knowing the risk that they were taking, that — that the entire basis of them being able to — to operate a casino and engage in Class III gambling could be overturned. But, Mr. Nelson — But that was under the Mischko suit, not yours. No, Your Honor. They knew that our suit had been filed. Oh, your suit had been filed at that point. Correct. Mr. Nelson, could I understand the scope of your argument? Because I had understood — let's — let's take the timing question aside for a minute. Let's — let's assume that you had filed this suit after title had transferred. I had understood that your argument was, yes, you should be allowed to do that, because even though this was filed after title had transferred, yours is just not a quiet title action, and it's not a quiet title action because you're not seeking title yourself. Isn't that the question? Isn't that your argument? Yes, Your Honor. So your argument really has nothing to do with the question of timing. Your argument would be the same even if title had transferred prior to your filing your lawsuit. Your Honor, we believe that that is a logical result, but we do not believe that the Court needs to address that issue in this case because our argument is much stronger than that because we did, in fact, file suit before the land was taken into trust. Well, as I understood your brief, 49 pages of it were about one thing, and there's one footnote that's about something else. In other words, all of your brief is basically saying, ours is just not a quiet title action, and so we should be allowed to proceed, irrespective of when the government acquired title. And then you have this little additional argument which says, by the way, we started this title anyway. So, I mean, the briefing in this case is all about what you now say is your weakest point. Your Honor, I would disagree that it's our weakest point, but I do agree that the logic here of the position that this is not a quiet title action means that even if the government remains an APA action, it is not converted into a quiet title action. I think you're right. I pushed you into it. It's my fault. And the proposition would be simply that the government can't go in and moot out a suit that was by its unilateral action, right? Yes. They seem to recognize that it would be a bad thing, since it's only by their grace they've told us that they don't do it right away anyway, but give people 30 days. Correct, Your Honor. Didn't they have some encouragement from a court of appeals suggesting there might be a due process problem, if they didn't have that notice? Your Honor, there was the Eighth Circuit decision, I believe it was United States v. South Dakota or South Dakota v. United States, in which the court there found that the lack of judicial review pushed towards the conclusion that the Reorganization Act is an unconstitutional delegation of legislative authority. And that was one of the reasons, or that was the reason cited in the Federal Register for why the Department of Interior adopted the 30-day notice provision. I don't think Justice Scalia's argument was a bad argument. I thought it was a rather good argument. If, in fact, you go back and you take the view that any suit filed to review APA is not a quiet title action, people could go upset government title to property years and years later, and they would say, oh, well, we're not challenging the title. We're just challenging what happened when it was taken, when the title was taken. Now, that can't be right, it seems to me, First Lodge. So, therefore, I thought you were yours is different because you filed before they took title. And as I say, I'm uncertain of that distinction. Now, your answers suggest you've been going both ways. Sometimes you think, well, it matters that we filed before, and other times you think, no, it doesn't matter. Is that because you don't have a theory as to why once the government takes it, it's not a quiet title action? Your Honor, the Quiet Title Act, by its terms, requires that the person who is asserting the action have an interest in the property. So answer my question, or the one that Justice Breyer has said, and the one Justice Kagan repeated yet again, okay? What difference does it make that the government has taken title? Whether the government has title or doesn't, under your theory, since this is not a quiet action title action, anyone who is unhappy with the way the government took title could be sued. Isn't that the bottom line of your theory? Yes, Your Honor. Absent latches. You say the only defense is latches. No, Your Honor. The defenses would be latches. The zone of interest would apply. Any other defense? But the bottom line is, under your theory, as long as no landowner, the person most an indirect person can sue within 6 years. Anybody who says I don't want the land, I just don't want the U.S. to have the land. No, Your Honor. There's a distinction I think has to be made there. The — someone who has a right title or interest in the property, absent there being trust land, can sue to upset the government's title for 12 years under the Quiet Title  Act. They could bring a claim under the APA for up to 6 years to govern the — to challenge the government's decision to take the land. But they can't undo the transfer. They can only get money. Under the Quiet Title Act, they can only, for the 12-year period, they can only undo — they can — excuse me, the government, if they prevail, the government, correct, has the option of deciding whether to pay for the land or to give it up. Of course, the government can fix that. I mean, if this is indeed an inconvenient situation that we think the government should not be in doubt for 6 years afterwards, I guess Congress can simply change it, right? Yes, Your Honor. Totally within the control of Congress. We don't have to make up some limitation to protect the United States. I agree, Your Honor. I suppose the question, Mr. Nelson, though, is whether you can provide us with a reason why Congress would have wanted what you call quiet title suits, and I agree that your definition is the traditional definition, when somebody — when the plaintiff is himself asserting a right or interest. Why those suits should be barred, but your suit involving a third party should not be barred? What could possibly be the reason to distinguish between those two sets of cases? Now, you might just say, I don't have to give you a reason. This is what the result of the statutes is. But if I say, just try to provide me with a reason why Congress would have wanted that distinction, what would you say? Your Honor, I guess I would first say that because relief under the APA is different than relief under the Quiet Title Act, someone with a right title or interest in the property can assert the same claim that Mr. Patrick can, in spite of the fact that they have that right title or interest, under the APA, as long as they do not seek under the APA to quiet title in themselves. Second, with regard to why this provision would — this provision is there, I'm sorry, Your Honor. I have to acknowledge I've lost a bit track of your question. Have I responded, or can you repeat it? What about this as a reason? When you prevail in a quiet title action, the only way the government can get off the hook is to give you the land, if it's within, what, the six years, or pay you money if it's after six years, but within 12. Whereas in your case, I suppose the government could moot the suit, moot the suit, by simply disallowing gambling. Can the government do that? Your Honor. Once it has told the tribe that they can have — I mean, this suit could be — could go away so long as the tribe does not run a casino. Isn't that right? That's your — that's the gravamen of your complaint. That is the gravamen of the injury, yes, Your Honor. So I guess you could be a happy fellow so long as the tribe doesn't build a casino. Whereas in quiet title cases, the only way you can make a happy fellow out of the plaintiff is to give him the land, right? Or to pay him for it, yes, Your Honor. Unless the Court has any further questions, I cede the remainder of my time. Thank you, counsel. Mr. Miller, you have four minutes remaining. Mr. Miller, one question, if I may. The government takes the position that — at least this is the way the Respondent puts it — that it can basically moot their action by turning this into a quiet title action just by taking title. And let's assume that that's one characterization of your position. And the Respondent, on the other hand, said, oh, well, this is an APA action. We can wait forever, at least for six years. Is there some midway position that the government can't moot the case too soon, that it must wait a reasonable time? Or is there no basis in the statute or the cases for that position at all? So if I understand correctly, you're asking about a case where the lawsuit is filed before the land has been transferred. Yes, yes. I don't know of any basis for restricting the government's ability to do that. I mean, short of the plaintiff's obtaining an injunction from the court. I mean, I guess the broader point I would make about that timing question is that the court of appeal — Well, in other words, you're sticking with your position. You say you can basically moot a suit at any point you want just by taking title. So you're not accepting any qualification to that proposition. That is our position. I would just emphasize that that was not the basis of the ruling of the court of appeals. The court of appeals held that it doesn't matter when the suit is filed. And under the court's analysis, it would be exactly the same even if it was filed later. And I think the error in that analysis is that the question here is not whether Patchak's suit is a Quiet Title Act action. The question is whether the Quiet Title Act expressly or impliedly precludes relief under Section 702. And the answer to that question is yes. And I would just like to make two points about that. The first is the general principle recognized by this Court in Brown v. GSA and a number of other cases, that when you have a narrowly drawn remedial scheme for a particular subject, that that precludes resort to more general remedies. And here the Quiet Title Act is exactly such a scheme. It's the mechanism for adjudicating a disputed title to real property in which the United States claims an interest. And it has its own procedures, its own statute of limitations. Kagan. But in saying that, you've just broadened it, or arguably you have. If you think that the Quiet Title Action is really about the narrower set of cases, which is when a person himself claims title, how can you get from that to say that there's an express or an implied refusal of this kind of claim? Anandantham. I think for two reasons, and the first is just that first sentence of 2409AA, which is to adjudicate a disputed title to land on which the United States claims an interest. That's a perfect description of what this case is. And the second is that the last sentence of Section 702 directs our attention to whether the relief is expressly or impliedly forbidden by another statute. And the relief that is sought here is an order compelling the Secretary to relinquish title on behalf of the United States to this land. Roberts. Do other consequences, other than the ability of the Secretary to take land in trusts, flow from whether or not a tribe was recognized in 1934? Anandantham. I'm not aware of any. I'm not sure that there aren't any others. Scalia. Do you have any concern that the government will get hoist by its own petard? What your argument, the conclusion to which your argument leads is that this individual or any individual claiming that the government took title incorrectly can sue under the Quiet Title Act, even if they don't claim that title was taken from them. Are you sure that's good for the government? Well, this action would be barred under the Quiet Title Act because the Quiet Title Act expressly precludes this relief where Indian trust land is at issue, where the relief that's sought is an injunction compelling relinquishment of title without the option of paying damages. Of course, that's not the only time the government takes land, right? Well, and the Quiet Title Act, Section D, requires in a suit under the Quiet Title Act the plaintiff to identify his interest in the land. Mr. Miller, I mentioned earlier in your footnote 1 in your reply brief about whether the time of filing question for sovereign immunity purposes is limited to diversity cases. Are there — you cite one case. Are there others going the other way? I'm not aware of others, but I can't say with confidence that there aren't any others. One point I would make on that is just to refer you to the Florida prepaid case from 1998, which was about State sovereign immunity and which explained that a State may condition its waiver of sovereign immunity and may change that in the course of the litigation. And I think that's another analogy that might be instructive here. So this suit would come out the other way if the person objecting was just over the border in Indiana instead of in Michigan? Because there would be — it could be brought as a diversity suit? Miller, I'm assuming it's a jurisdiction. It would still be, but sovereign immunity would still apply. Sovereign immunity would bar relief even if the basis for jurisdiction were diversity. Even if it were a suit against the tribe, it would still be not a diversity action, but a Federal cause of action? Our point is that the reason it's barred is because of sovereign immunity. When the time of filing in diversity cases refers to if the citizenship of the parties changes during the course of the litigation, that doesn't — my understanding is that doesn't defeat diversity. That's the nature of that exception. Okay. Thank you, counsel. The case is submitted.